JOSEPH M. P. OTT *et ux. vs.* WALTER J. STEIN.

APRIL 26, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is a bill in equity to enjoin the respondent from interfering with the complainants' use of a certain parcel of land and praying that title thereto be established and confirmed. The respondent's answer is in the nature of a crossbill. He denies the material allegations on which the complainants base their prayers for relief and in addition prays for certain affirmative relief. After a hearing before a justice of the superior court on bill, answer and proof, a final decree was entered granting some of the relief requested by the complainants and denying the respondent's prayers. From such decree both parties have appealed to this court.

The controversy involves certain portions of a large tract of land located between the Atlantic ocean and the easterly line of Ocean avenue in the town of Narragansett southerly of Narragansett Pier. This tract was originally owned by the Hazard family and was part of a farm known as the Champlin Farm.

On November 4, 1868 the Hazards conveyed a portion thereof to William R. Babcock. In the deed of conveyance the Hazards expressly reserved title to the fee in the area of rocks lying between the easterly side of the land sold and the ocean. They also provided in the deed that 10 feet of the land conveyed along the bank or turf on the eastern boundary was to remain open as a footpath for the use of

the public forever. This tract of land measured 535.26 feet on the easterly side of Ocean avenue from the point of beginning, which is described in the deed as being the southwest corner of the land conveyed and the northwest corner of land of Joseph P. Hazard identified as Sea Meadow.

On October 19, 1874, Babcock conveyed to Frank E. Richmond, complainants' predecessor in title, the parcel ultimately acquired by them. The premises are described by metes and bounds and further identified by a plat prepared by S. B. Cushing & Co. and A. Noyes which is attached to the deed and made a part thereof. The point of beginning is the same as in the prior deed, and from such point of beginning the description runs northwesterly along the easterly line of Ocean avenue a distance of 248.54 feet. The deed also provides for the future widening of Ocean avenue which would result in lengthening the westerly boundary of the premises to 250.5 feet. This did occur. Title to the rocky area was reserved to the Hazards and the deed provided that the 10-foot footpath was to remain open, as in the prior deed.

The northerly line of the premises conveyed to Richmond is described in the deed as follows:

"On the North by a line parallel with the first described line or Southern boundary running Easterly from the Easterly line of said extension of Ocean Avenue about Three hundred and twenty two (322) feet or to where the turf line meets the coast rocks *said Northerly boundary line being the Southerly line of an Avenue forty (40) feet in width, the land for which said Avenue is hereby thrown out and given by this Grantor the said Babcock for a highway to be kept open for the use of the public forever * * *.*" (italics ours)

The opposing claims of complainants and respondent to the title to this 40-foot avenue raise the principal issues in this case. We shall hereinafter refer to this 40-foot area as the "unnamed avenue."

On August 11, 1879 Babcock conveyed to Samuel Colgate, respondent's predecessor in title, the remainder of the land which he had acquired from the Hazards. This is substantially the parcel now owned by respondent and is located north of the unnamed avenue. The premises are described in the deed as beginning at the intersection of the easterly line of the extension of Ocean avenue and *"the Northerly boundary line of an avenue forty (40) feet wide running easterly from said extension of Ocean Avenue to the sea shore and separating the lot hereby conveyed from land owned by Frank E. Richmond,"* complainants' predecessor in title. (italics ours) The lot was further described as bounded on the west by a line following the easterly side of Ocean avenue and measuring thereon 249 feet. This deed also reserved title to the fee in the rocky area and provided for the 10-foot footpath along the turf, the same as was done in the prior deeds.

On September 11, 1879 Colgate deeded the lot to J. Aspinwall Hodge and on September 18, 1879 the latter deeded the premises to Elizabeth A. Colgate, wife of Samuel Colgate.

It may be helpful to point out at this time that a comparison of the conveyance from the Hazards to Babcock with the conveyances from Babcock to Richmond and Colgate reveals a discrepancy in measurements. It appears that Babcock attempted to convey to Colgate more land than he had left after the conveyance to Richmond. This apparent discrepancy affected the dimensions of the parcels involved as well as the location of the unnamed avenue.

On October 10, 1879 the Hazards entered into an agreement, hereinafter referred to as the Hazard agreement, with the respective owners of the lots adjacent to the rocky area whereby they gave such owners access to the rocks for purposes of fishing and recreation. As we have already stated, whenever the Hazards sold any portion of their shore property, they expressly reserved title to and control over the

rocky area lying between the ocean and the easterly termini of the parcels sold. In this agreement the Hazards retained title to the fee of the rocky area and the respective owners of such parcels agreed "to throw out from the land owned by each a strip ten feet wide" for a continuous footpath along the rocks.

This agreement was signed by the Hazards, the Colgates, Frank E. Richmond, and other persons who had bought lots of land on the Champlin Farm from the Hazards or who then owned lots that were formerly bought from the Hazards. The agreement contained, among others, the following provision:

"And it is further agreed by all the parties hereto that the plat made by George T. Lanphear in the year 1879 of even date herewith and filed for record at the same time with this instrument is a true plat of the lands in question and all the parties to this agreement are to have full and free right of way over all of the roads streets and paths laid down on said plat."

The plat referred to in the agreement is in evidence. The 10-foot path along the rocky area and the unnamed avenue are shown thereon, the unnamed avenue being identified as "street." The plat describes complainants' land as measuring 242 feet on the easterly side of Ocean avenue and respondent's predecessors' parcel as measuring 255 feet thereon.

It may be helpful to point out that after the Hazard agreement every conveyance in respondent's chain of title was made specifically subject to the provisions of such agreement.

Thereafter, on October 15, 1881, William R. and Catherine P. Babcock, by quitclaim deed, conveyed to Elizabeth A. Colgate, respondent's predecessor in title, all their right, title and interest in and to the unnamed avenue. The description in this deed gives the northwest corner of the parcel conveyed, the starting point, as the southwesterly corner of the lot sold by Babcock to Colgate in 1879. The deed

further describes the parcel quitclaimed as running in a southeasterly direction 43 feet "to the corner of a stone wall forming the Northwest corner of a lot of land now owned by Mrs. Howard Lapsley * * *."

Mrs. Lapsley, complainants' predecessor in title of the parcel now owned by them, acquired title to the same from Richmond on March 29, 1881. It appears that she erected the stone wall which surrounds complainants' land on three sides.

The quitclaim deed from Babcock to Colgate states that the northwesterly corner of the parcel conveyed is "marked by a stone set in the earth." This deed also provides for the 10-foot footpath along the turf and, in addition, provides that *"A foot path of the same width for the use of the public is also to remain open forever along the entire Southern side of the lot of land hereby conveyed."* (italics ours)

On November 4, 1901 the devisees under the will of Elizabeth A. Colgate by warranty deed conveyed the Colgate parcel to Annie Wood Dilworth and on the same date quitclaimed to Dilworth all their right, title and interest in and to the unnamed avenue, expressly referring to the same as "the strip of land about 40 feet in width formerly laid out as a right of way, the same having been at least partially abandoned."

On April 1, 1908 Annie Wood Dilworth conveyed the premises by warranty deed to Boudie Barnett Jones and on the same date quitclaimed all her right, title and interest in and to the unnamed avenue, using the same description that was used in the deed to her.

On January 2, 1945 The Anna Hazard Land Company, successor to the Hazard sisters, by quitclaim deed conveyed to the devisees under Boudie Jones' will all its right, title and interest to the fee in the rocky area lying between the ocean and the easterly side of the unnamed avenue and

Boudie Jones' other lot, the latter being the lot presently owned by respondent.

On December 1, 1952 the Jones heirs by warranty deed conveyed the Jones lot to A. Perry Avery and at the same time quitclaimed to Avery all their right, title and interest in the rocky area and in the unnamed avenue.

On October 16, 1958 Avery by warranty deed conveyed his lot to respondent and in the same conveyance quitclaimed all his right, title and interest in the rocky area and in the unnamed avenue.

It appears from the foregoing that after the quitclaim deed from Babcock to Colgate in 1881 every conveyance in respondent's chain of title was accompanied by a release of all the right, title and interest of each successive grantor in the unnamed avenue and each deed in the chain of title referred to the 1881 deed.

We shall now return to complainants' chain of title. On September 30, 1919 the trustee under the Lapsley will conveyed the premises to Joseph Ott, the father of Joseph M. P. Ott, one of the complainants in this case. Joseph M. P. Ott acquired the property under the will of his father who died June 29, 1943. On October 25, 1943 he conveyed the same to himself and his wife as joint tenants.

It may be pertinent to point out that every conveyance in complainants' chain of title after the Hazard agreement in 1879 refers to such agreement and is made subject to the provisions thereof.

A dispute arose between these parties involving the title to the unnamed avenue and their respective rights to use the same. The complainants contend that their land runs northerly along the easterly line of Ocean avenue a distance of 250.5 feet, more or less, to the southerly line of the unnamed avenue and that the unnamed avenue separates their land from that of respondent. They base their claim on the description in the Babcock to Richmond deed in 1874.

They also contend that the northerly face of the wall on their property runs from a point on Ocean avenue 8 feet southerly from the southerly line of the unnamed avenue in an easterly direction.

The complainants allege that shortly after Joseph Ott acquired the land in 1919 he erected a year-round residence thereon and maintained large lawns and a circular driveway from the unnamed avenue through an opening in the wall located about 90 feet easterly of Ocean avenue; that he maintained on the strip of land between the north facing of the wall and the southerly boundary of the unnamed avenue a grassy sidewalk from Ocean avenue easterly for a distance of about 90 feet to the side entrance; that he planted and maintained trees, a substantial hedge and bushes in the strip of land between the wall and the southerly line of the unnamed avenue from the easterly side of the side entrance to substantially the northeast corner of complainants' land; that he used the unnamed avenue for ingress and egress to and from his premises for all purposes; and that complainants since their acquisition of the premises in 1943 have continued such use uninterruptedly.

The complainants further contend that by virtue of the deeds in their chain of title they are the owners in fee simple of the one half of the unnamed avenue adjoining their land; that respondent is the owner of the other half; that both have an easement over the entire unnamed avenue for access to their respective properties and for all purposes for which a highway may be lawfully used; and that by virtue of the language in the deeds creating the unnamed avenue the same was dedicated for public use to be kept open forever.

The respondent denies the material allegations in the bill of complaint. He contends that by virtue of the Hazard agreement in 1879 complainants' land measures only 242 feet on Ocean avenue; that he is the owner in fee of the unnamed avenue and the rocky area lying between the east-

erly terminus of such avenue and the ocean; that he acquired title to the fee of the unnamed avenue by virtue of deeds conveying the same to him and to his predecessors in title running back approximately eighty years beginning with the quitclaim deed from Babcock to Colgate in 1881.

In addition respondent contends that he has acquired title by adverse possession by him and his predecessors in title of the entire area from the north face of the wall bounding complainants' land on the northerly line to the parcel owned by respondent north of the unnamed avenue; that such adverse possession runs back continuously for more than sixty years from the date of the instant bill; that the stone wall is the northerly boundary of complainants' land and the southerly boundary of the unnamed avenue; and that any use of such unnamed avenue by complainants or their predecessors in title was only by permission of respondent or his predecessors in title.

The respondent further alleges that all of the land north of the wall has been taxed to him and his predecessors in title as the owners thereof; that complainants' predecessors in title established the northerly line of their land by the stone wall on the north; that his predecessors in title for a period running back approximately to 1900 or earlier occupied the entire area of the unnamed avenue up to the face of the stone wall to the exclusion of all other persons; that his predecessors in title used such area as their property exclusively, cultivating flower gardens, lawns and constructing tennis courts and private driveways; and that the same were maintained exclusively for the benefit of his predecessors in title continuously without opposition for approximately sixty years.

The respondent contends that there was only an incipient dedication to the public of the unnamed avenue and later of the footpath and to date neither has ever been accepted by public authority or by public users to effect a complete dedication to the public.

The respondent is in the process of erecting a residence on his land. The complainants allege that he has a bulldozer working on the unnamed avenue substantially changing the grade thereof; that he has made the same impassable in an easterly direction from the easterly end of their side entrance; that he has threatened to remove the sidewalk and to uproot the hedge, trees and bushes and to pave the surface of the area; and that he has obstructed the entrance from the unnamed avenue to complainants' premises.

The bill prays that respondent be enjoined from committing the alleged acts and from obstructing any portion of the unnamed avenue which would impede or prevent full and unobstructed access to every portion thereof from any part of complainants' premises abutting thereon and that he be required to restore the unnamed avenue to its former state and condition. In addition the bill contains a prayer that complainants' title in fee to the southerly half of the unnamed avenue and the full surface right therein, in common with respondent, and their title to the area between the north face of their wall and the southerly boundary of the unnamed avenue be established and confirmed.

As we have previously stated respondent's answer is in the nature of a cross-bill. In addition to the prayer that the bill be denied and dismissed, respondent seeks the following affirmative relief, namely, that under G. L. 1956, §§9-14-23 and 9-14-24, the court make a binding declaration of right to the effect that respondent is the owner in fee simple without any encumbrances whatsoever to all of the land between the north face of the northerly stone wall of the land owned by complainants and respondent's land to the north of the unnamed avenue. He also prays that complainants be permanently enjoined from interfering with his use and enjoyment of such area and from using any portion thereof.

At the hearing in the superior court the parties presented both lay and expert testimony and various exhibits to prove

their respective contentions. After the hearing the trial justice filed a written decision in which, after carefully reviewing the evidence and the applicable law, he made certain findings on which the decree before us is based.

He found that the deed from Babcock to Richmond in 1874 was an incipient dedication of the unnamed avenue which could not thereafter be withdrawn unilaterally by the grantor or by respondent's predecessors in title. He therefore found no merit in respondent's contention that such offer of dedication was withdrawn by the quitclaim deed from Babcock to Colgate in 1881. He relied on *Day* v. *Edmondson,* 68 R. I. 382, 389.

With respect to respondent's prayer that the court adjudicate his claim of ownership by adverse possession to the entire area of the unnamed avenue, he held that in order to establish such title it was respondent's obligation under *Day* v. *Edmondson, supra,* at page 388, to proceed against all those parties who by virtue of the Hazard agreement in 1879 had rights in said unnamed avenue.

The trial justice found that the Hazard agreement and the Lanphear plat referred to therein were made in accordance with the accepted understanding of the parties, and particularly of complainant's predecessors in title, with respect to the dimensions and location of the parcels in question. Relying on *Almy* v. *Church,* 18 R. I. 182, he held that the parties could have made a substitution in which they located the unnamed avenue and he found that it was located as shown on the Lanphear plat.

The trial justice refused to pass on complainants' claim that they owned the fee to one half of the unnamed avenue on the ground that such a determination was not necessary to any claim of relief sought by them. He stated that the principal issue in this case was whether the unnamed area was a public way or whether respondent could claim all or a part thereof to the exclusion of complainants and others.

On the question whether the unnamed avenue was a public highway he found, as we have already stated, that the deed from Babcock to Richmond in 1874 shows an intention to dedicate such area as a public highway. However, relying on *Union Co.* v. *Peckham,* 16 R. I. 64, 65, he held that an effective dedication requires an intention or offer to dedicate and an acceptance by the public either by appropriate formal action or by user for a sufficient length of time. After discussing certain deeds in respondent's chain of title which contained references to the unnamed area as "once laid out as a street or avenue," "formerly used as a street or avenue," "formerly laid out as a right of way, the same having been at least partially abandoned," he found that complainants had not sustained their burden of proof that the unnamed avenue was ever accepted as a public way by general user by the public, or that the references mentioned in the deeds established the necessary acceptance either by way of admissions or estoppel against respondent.

After reviewing the testimony of various witnesses who testified as to the use of such unnamed avenue over the years, the trial justice found that from 1901 the unnamed avenue was used primarily and almost wholly as a private way by complainants and certain of their predecessors in title and by respondent and certain of his predecessors in title.

With respect to respondent's defense of adverse possession the trial justice found that complainants and their predecessors had used the unnamed avenue from Ocean avenue to complainants' premises in order to enter their premises through the break in the wall or driveway facing the unnamed avenue; that the evidence did not support a finding that such use was permissive or that respondent and his predecessors were entitled to appropriate all of the unnamed avenue; that as between the original grantor and the original grantee the conveyance from Babcock to Richmond was

a dedication of that way for use by Richmond; and that the private rights of complainants were fixed in 1874.

The trial justice held that the burden of proof was upon respondent to establish his affirmative defense of adverse possession. He found that there was a continuous and consistent use by complainants and their predecessors of that portion of the unnamed avenue which extends easterly from Ocean avenue a distance of approximately 103 feet and that the evidence did not support a finding that respondent established any rights exclusive of complainants to such portion.

He also found that neither the public nor anybody else could have used the 10-foot strip next to the stone wall in order to reach the turf line or the coast rocks because the area of land which is beyond the umbrella tree, about 103 feet easterly of Ocean avenue, was blocked by hedges, trees, shrubs and a thicket of rose bushes running from the stone wall in a northerly direction.

There is a circular driveway on the easterly portion of the unnamed avenue. The occupants of the Dilworth and Jones property were able to enter the residence on their parcel by means of this driveway. The trial justice found that from 1901 on respondent and his predecessors in title used the easterly portion of the unnamed avenue commencing 103 feet easterly from Ocean avenue as their own property openly, notoriously, and at times aggressively to the exclusion of the rest of the world. There were flower beds, privet hedge, vegetation and a tennis court all within said area to the point of the northerly face of the northerly wall of respondent on the unnamed avenue from the point 103 feet easterly of Ocean avenue.

The trial justice stated that the testimony was undisputed that since 1901 that portion of the unnamed avenue was maintained, cultivated and controlled by respondent's predecessors. He found that there was a complete appropriation of this area for over sixty years by respondent's

predecessors. He held that as between complainants and respondent, prior to an acceptance by appropriate formal action or by public user, respondent could acquire in the portion in question rights as against complainants and their predecessors; that such use of this portion was long continued, open, notorious and adverse to the rights of complainants; and therefore they were not entitled to the relief they sought with respect to the portion of the unnamed avenue which commences 103 feet easterly from Ocean avenue.

He held that complainants and respondent were entitled to equal and lawful right of use to and over the portion of the unnamed avenue extending easterly a distance of 103 feet from Ocean avenue.

A final decree in accordance with the findings and decision of the trial justice was thereafter filed. It permanently enjoins respondent from changing the grade of the unnamed avenue for a distance of 103 feet easterly from Ocean avenue and from obstructing any part of the 103 feet of the unnamed avenue in such a manner as to impede full, complete, and unobstructed access to complainants' premises abutting thereon, subject to respondent's equal and lawful right of use over such area. The decree denies and dismisses complainants' other prayers and it denies the relief sought by respondent.

The complainants have filed twenty-two reasons of appeal and respondent has filed eighteen. Each side contends in substance that the decree is against the law and the evidence and the weight thereof, but on different grounds.

The complainants, as we have already stated, base their right in and to the use of the unnamed avenue upon a record title in fee to the center line thereof and a surface easement over its entire area, subject to similar reciprocal rights therein in respondent and to the rights of the public and themselves as members thereof to the unrestricted use thereof for highway purposes by virtue of its dedication there-

for. They argue that the decree should be set aside and the cause remanded to the superior court with instructions to that court to grant in full all the prayers in their bill and to deny all respondent's prayers.

The respondent, on the other hand, not only denies complainants' title to the center line of the unnamed avenue and their easement over the entire area thereof, but by way of cross-bill seeks also to have title in fee thereto established in himself to the complete exclusion of complainants and all other persons. He argues that the cause should be remanded with instructions that the decree be modified by denying complainants' prayers for relief as to the entire area of the unnamed avenue or, in the alternative, that only a 20-foot strip from Ocean avenue to the eastern end of complainants' side entrance be made available to them for their right to pass and repass with the rights of the respective parties specified in detail.

We have carefully examined the transcript and all of the exhibits. On the basis of the evidence before him the trial justice made express findings of fact. He found that complainants had failed to sustain their burden of proof that the original grantor's offer of dedication had been accepted by user; that as between these parties respondent had sustained his burden of proof of adverse possession of the easterly portion of the unnamed area; that complainants' land measured 242 feet on the easterly side of Ocean avenue northerly from Sea Meadow; and that the unnamed avenue commenced where complainants' westerly line ended. In addition he made other findings which we have already noted.

Neither party has persuaded us that in making such findings the trial justice was clearly wrong or that he overlooked or misconceived any material evidence. We hold that his decision is based upon findings of fact which are supported by the evidence and that the final decree as entered conforms to such decision. This case does not involve a deed

of the unnamed avenue to the town and therefore G. L. 1956, §24-2-8, is not applicable.

After careful consideration of all the reasons of appeal which the parties have briefed and argued it is our opinion that the decree is not against the law.

The appeals of both the complainants and the respondent are denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

FROST, J., did not participate in the decision.

ROBERTS, J., dissenting. I am unable to concur in the majority's conclusion that the avenue described in the deed from Babcock to Richmond did not upon the execution and recordation of that deed become a highway pursuant to the provisions of Gen. Stat. 1872, chap. 59, sec. 25. That deed was acknowledged on October 19, 1874 and recorded in the town of South Kingstown on October 29, 1874. Babcock, as the grantor, conveyed therein not only a parcel of land to Richmond but also conveyed to the public for highway purposes a forty-foot strip of land lying immediately north of the parcel conveyed to Richmond. In this deed the northerly boundary of the land conveyed therein to Richmond was described as being "the Southerly line of an Avenue forty (40) feet in width, the land for which said Avenue is hereby thrown out and given by this Grantor the said Babcock for a highway to be kept open for the use of the public forever * * *." In *Town of Harper's Ferry* v. *Kaplon Bros.*, 58 W. Va. 482, 485, the West Virginia court said: "A dedication of land by the owner to the public, for the purpose of a public street, may be established by evidence contained in a deed made by such owner to a private person, in which the rights of the public are recognized."

The statute to which reference is made above was in effect at the time of the execution of the Babcock-Richmond deed and is now G. L. 1956, §24-2-8. This statute provides in pertinent part that "whenever the owner of any land shall

make a deed thereof to the town wherein such land lies, for the especial purpose of being used and improved as a public highway, and the deed shall have been duly acknowledged and recorded, the land shall be thenceforward a public highway to all intents and purposes * * *." In *Eddy* v. *Clarke*, 38 R. I. 371, 375, this court stated that this legislation provided for a statutory dedication procedure. It is my opinion that the legislature intended to provide for the express dedication by deed of land for use as public highways and for a conclusive presumption of the acceptance of such dedication by the appropriate municipality when such conveyance is made in compliance with the provisions of the statute.

It is well settled that a statutory dedication, to be effective, must be made in substantial compliance with the terms and conditions prescribed therefor by the legislature. This requirement of substantial compliance, however, does not warrant a judicial nullification of the purpose of the legislation by a resort to any strict construction thereof. The pertinent statute in no manner derogates from the common-law rights inhering in the ownership of land, nor does it tend to restrict the alienation thereof. In such circumstances I am of the opinion that this statute should be applied with a sufficient liberality to permit the accomplishment of the purposes for which it was enacted.

Where a landowner demonstrates his intention to make an express dedication of land for highway purposes by deed and acknowledges and records that deed, a conclusive presumption arises by operation of the statute that such dedication has been accepted by the appropriate municipal corporation, and from that time forward the land is a public highway. In *Greene* v. *O'Connor*, 18 R. I. 56, 59, this court said: "The conveyance being for the benefit of the public, acceptance of it by the proper authority representing the public is presumed. Having once become a highway, it must continue to be a highway until abandoned or declared

useless as such by the board of aldermen under another provision of the statute." I am persuaded that under this statute as it is interpreted in *Greene* v. *O'Connor, supra,* the town of South Kingstown was conclusively presumed to have accepted Babcock's dedication of the avenue by the deed to Richmond at the time of the recordation thereof and that thereafter this dedication could not be revoked by the action of the parties to the Hazard Agreement, so called, and in the absence of evidence of an abandonment by the municipality it must be regarded as continuing to have the status of a public highway.

In taking this view, I am cognizant of the fact that in the instant deed the conveyance of the land for highway uses was made specifically to the public and that the municipality is not therein made an express grantee of that land. I am aware also that in *Remington* v. *Millerd,* 1 R. I. 93, this court held that the statute became operative only when legal title to the land conveyed for highway purposes vested in the municipality. I am of the opinion, however, that in the instant case legal title to the land conveyed in the Babcock deed vested in the town of South Kingstown and that the town of Narragansett as the successor of the town of South Kingstown now holds the land in trust for the public.

I am persuaded from an examination of the cases and of the writings of at least one eminent authority on this subject that a conveyance of land expressly for highway purposes to the public vests legal title to the land by operation of law in the appropriate governmental entity which shall hold it in trust for the public. Conceding that in *Greene* v. *O'Connor, supra,* the land in question was conveyed specifically to the municipality, it is my opinion that the court clearly indicated in its language that where such conveyance of land is for the benefit of the public, the statute becomes operative and acceptance by the appropriate authority representing the public is presumed. In 1 Elliott, Roads

and Streets (4th ed.), §162, the text writer said: "Where land is dedicated to the public it will pass to a corporation created for the government of the locality by operation of law." Because the purpose of the statute is to provide for express dedications of land by the owner thereof and a statutory presumption of the acceptance of such dedications, I am persuaded that where land is conveyed directly to the public and for its benefit, it is in legal effect a conveyance of legal title of the land to the appropriate governmental corporation representing the public which holds it in trust therefor.

*Woolley, Blais & Quinn, Clarence N. Woolley, Henry J. Blais, III,* for complainants.

*Woodrow J. Tucker, Martin M. Zucker,* for respondent.